UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

| | | |
|---|---|---|
| UNITED STATES of AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | Criminal Action No. 6: 05-28-DCR |
| | ) | |
| CHARLES HARVEY LEWIS and ROBERT HOSKINS, a/k/a, BOB, | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | | |
| UNITED STATES of AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | Criminal Action No. 05-30-S-DCR |
| | ) | |
| KENNETH DAY, a/k/a, KENNY, TERRY HOLLAND, JAMES HENRY DAVIDSON, JR., a/k/a, JIM, MARK EDWARD BAIRD, STEVEN NEAL DAVIDSON, a/k/a, SKULL, RANDY SALYERS, LOREDA SIZEMORE SMITH, THOMAS EDWARD EFFLER, MELVIN COUCH, a/k/a, DROPSEY, CHARLES HARVEY LEWIS, ROBERT N. DEMLING, and MICHELLE L. SMITH, | ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

On April 27, 2005, a federal grand jury returned an indictment against Charles Harvey Lewis and Robert Hoskins. The indictment in London Criminal Action No. 6: 05-28-DCR alleges that these Defendants engaged in a conspiracy together and with others to knowingly and

intentionally distribute, and possess with intent to distribute, a mixture or substance containing a detectable amount of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. The activity allegedly occurred in Clay and Knox Counties, Kentucky, during the period September 2004 through April 2005. Defendant Lewis retained the law firm of Stephen Charles to represent him in this criminal matter.

The grand jury returned other indictments on April 27, 2005, including London Criminal No. 6: 05-30-DCR. This criminal action originally included two counts, naming nine defendants. The indictment alleged a criminal conspiracy to distribute, and possess with intent to distribute, cocaine and marijuana during the period August 2004 through April 20, 2005, in Clay County, Kentucky. Two of the original defendants in London Criminal No. 6: 05-30-DCR included Thomas Edward Effler and Mark Edward Baird. Both Defendants Effler and Baird retained the law firm of Stephen Charles to represent their interests. However, prior to Charles entering an appearance in either criminal action, the United States filed a notice of related cases.

On May 26, 2005, a superceding indictment was returned which expanded the scope of the original indictment to include additional defendants and charges. In its present form, London Criminal No. 6: 05-30-S-DCR contains thirty-two counts. The defendants added as parties through the superceding indictment include Melvin Couch (a/k/a, Dropsey), Charles Harvey Lewis, Robert N. Demling and Michelle Smith.

This matter is pending for consideration of the United States' motion to disqualify the law firm of Stephan Charles from representing Defendant Lewis in both matters and Defendants Effler and Baird in London Criminal Action No. 6: 05-30-S-DCR. After reviewing the pleadings

and other matters filed in these actions, the Court concludes that either an actual or apparent conflict of interest exists which prevents the law firm of Stephen Charles from representing the Defendants in either criminal action. Accordingly, the United States' motions will be granted and the law firm of Stephen Charles will be disqualified from further participation in both actions.

## BACKGROUND

All three defendants are allegedly involved in a marijuana and cocaine distribution conspiracy in Clay County, Kentucky. Defendant Kenneth Day is a claimed leader of this conspiracy which allegedly has several tiers. Defendant Effler is asserted to be involved in the marijuana prong of the conspiracy. In Count 3 of the superceding indictment in London Criminal Action No. 6: 05-30-S-DCR, it is alleged that Effler, Day and others conspired to distribute, and possess with intent to distribute, 1,000 kilograms or more of a mixture or substance containing a detectable amount of marijuana. He is also charged in a substantive distribution count [Counts 16] occurring April 9, 2005, as well as a forfeiture count [Count 30].

During a detention hearing held before Magistrate Judge J.B. Johnson, Jr. on May 23, 2005, testimony was presented by DEA Special Agent Jerel Hughes in which Defendant Lewis was described as a distributor of cocaine supplied by Defendant Day. This testimony was supported by statements of a cooperating witness and a wiretap of recorded calls from Lewis to Day. During an earlier hearing held on May 12, 2005, FBI Special Agent Timothy Briggs testified that Defendant Baird was a main source of cocaine supplied to Defendant Day.

The superceding indictment returned May 26, 2005 in London Criminal Action No. 6:05-30-S-DCR contains three substantive counts (Counts 2, 7 and 10) which include charges against Defendants Lewis and Baird. In addition, Defendants Lewis, Baird, and Effler are named in Count 23 which seeks a monetary judgment of $5,000,000.00 against these and other Defendants. Specifically, Counts 2, 7 and 10 allege that Defendants Lewis, Baird, and others engaged in a conspiracy to distribute, and possess with intent to distribute, cocaine during the period January 1997 through April 28, 2005 [Count 2] and distributed a mixture or substance containing cocaine on or about September 22, 2004 [Count 7] and October 26, 2004 [Count 10].

## ANALYSIS

The United States argues that joint representation could: (1) make it more difficult for these defendants to negotiate and possibly enter into plea agreements because subsequent negotiations will inevitably implicate other Defendants including those represented Stephen Charles; (2) allow Baird, as an alleged leader of the conspiracy, to exert control over persons lower in the conspiracy to their detriment; and (3) make it difficult (if not impossible) for Mr. Charles to render fair and impartial advice to his clients when deciding whether they should testify, given that their testimony could implicate other defendants who he represents.

There are concerns about potential sentencing issues, should any defendant be found guilty. Prior to sentencing proceedings, it may be in a Defendant's best interest to cooperate with the United States in the hope of obtaining some relief via § 5K1.1 of the United States Sentencing Guidelines. In addition to these factors, investigation conducted by counsel during these criminal actions may yield information helpful to one Defendant, but damaging to another.

Mr. Charles responds to the United States' motion by stating that it is premature to consider this issue given that, at the time his response was filed, the superceding indictment had not been returned, and considering that he has no evidence of a connection between these three Defendants. However, the superceding indictment which has now been returned contains counts which connect Defendants Baird, Effler, and Lewis with the alleged conspiracies as a supplier or distributor of marijuana and/or cocaine. Having reviewed the evidence from the various hearings, the Court believes that it is very likely that significant conflicts either have or will develop if the defendants are jointly represented.[1] In light of this evidence, Stephen Charles will not be able to effectively represent one Defendant without compromising the interests of another. Further, the knowledge that is likely possessed by attorney Charles at this stage of the proceedings counsels that the best course of action is to have each Defendant he currently represents obtain a new attorney. In short, Charles will not be allowed to withdraw from the representation of two Defendants while continuing to represent a third.

The Supreme Court has noted that "while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to

---

[1] Some instances of shared representation are appropriate, depending upon the facts presented. In those cases, a written waiver, together with oral warnings from the Court, *may* be sufficient to insure proper and adequate representation. However, in multi-tier conspiracies written waivers can be illusory. An individual defendant's ability to make critical decisions may be compromised if he or she is represented by the same attorney who happens to represents other defendants with greater culpability. In such situations, the waiver may be viewed – either correctly or incorrectly – as the proverbial "offer" that a defendant cannot refuse. If the defendant believes he must sign the waiver or face the consequences, it does not matter that the attorney representing both parties has pure motives. A defendant is entitled to zealous representation by an attorney who the defendant believes will not share information with other parties having competing interests and without fear that information he provides in confidence will not be used to his detriment.

ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States*, 486 U.S. 153, 159 (1988). Indeed, "a court confronted with and alerted to possible conflicts of interest must take adequate steps to ascertain whether the conflicts warrant separate counsel." *Id*. at 160. Here, *even if* all Defendants waive their right to be represented by independent counsel, this Court must still consider whether joint representation should be permitted because "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to those who observe them." *Id*. Accordingly, Rule 44(c) of the Federal Rules of Criminal Procedure provides that, "[u]nless it appears that there is good cause to believe no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel."

Apparently, Defendant Baird has discussed the issue of effective representation and waiver with the magistrate judge. It is unclear, however, whether the other Defendants have been advised of the potential conflicts. Regardless, "where a court justifiably finds an actual conflict of interest, there can be no doubt that it may decline a proffer of waiver, and insist that defendants be separately represented." *Wheat*, 486 U.S. at 162. As the Supreme Court has recognized, it is difficult for the Court to consider this issue prior to trial:

> [u]nfortunately for all concerned, a district court must pass on the issue whether or not to allow a waiver of a conflict of interest by a criminal defendant not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when relationships between parties are seen through a glass, darkly. The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials. It is a rare attorney who will be fortunate enough to learn the entire truth from his own client, much less be fully apprised before trial of what each of the Government's

witnesses will say on the stand. A few bits of unforeseen testimony or a single previously unknown or unnoticed document may significantly shift the relationship between multiple defendants. These imponderables are difficult enough for a lawyer to assess, and even more difficult to convey by way of explanation to a criminal defendant untutored in the niceties of legal ethics. Nor is it amiss to observe that the willingness of an attorney to obtain such waivers from his clients may bear an inverse relation to the care with which he conveys all the necessary information to them.

For these reasons we think the district court must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses.

*Id*. at 162-63.

At a minimum, this Court believes that a significant potential for conflict exists if these Defendants are represented by the same attorney. Further, any attempt to "waive" the conflict would be ineffective under the facts presented. Thus, regardless of whether these Defendants are willing to execute a waiver, the Court must disqualify their attorney in order to protect the fairness of proceedings and insure that the Defendants are adequately and fairly represented.

Accordingly, it is hereby

**ORDERED** that the United States motion to disqualify the law firm of Stephan Charles [Record No. 14 in 6: 04-28-DCR & Record No. 60 in 6: 04-30-S-DCR] is **GRANTED**. The law office of Stephen Charles – and Stephen Charles individually – is **DISQUALIFIED** as counsel in these proceedings.

This 27th day of May, 2005.



**Signed By:**
*Danny C. Reeves* DCR
**United States District Judge**